**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Amanda Knox, | : | Case No. 1:10CV819 |
| Plaintiff, | : | |
| v. | : | |
| Commissioner of Social Security, | : | **MEMORANDUM DECISION** |
| Defendant. | : | **AND ORDER** |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's final determination denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*. Pending are the parties' briefs on the merits (Docket Nos. 18 and 24). For the reasons that follow, the Magistrate recommends that the Court affirm the Commissioner's decision.

### I. PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on April 30, 2008 alleging onset of her disability on March 15, 2008 (Docket No. 14, Exhibit 8, p. 2 of 59). Plaintiff's requests for DIB and SSI benefits were denied initially and upon reconsideration (Docket No. 14, Exhibit 5, pp. 2-4; 5-7; 8-11; 12-14 of 29). On September 1, 2009, Plaintiff, represented by counsel, and Vocational Expert (VE) Paula Day appeared and testified at an administrative hearing before Administrative Law Judge (ALJ)

O. Price Dodson (Docket No. 14, Exhibit 3, p. 2-3 of 25). The ALJ rendered an unfavorable decision on September 22, 2009 (Docket No. 14, Exhibit 2. pp.10-22 of 22 ). The Appeals Council denied Plaintiff's request for review on March 5, 2010 (Docket No. 14, Exhibit 2, p. 2-6 of 22). Plaintiff filed a timely action seeking judicial review of the Commissioner's final decision.

## II. FACTUAL BACKGROUND

### A. PLAINTIFF'S TESTIMONY.

At the date of the hearing, Plaintiff was thirty years old. She was a high school graduate with no additional education or training. She lived with her boyfriend and two minor children. Child support provided her primary source of income. Plaintiff had a driver's license but limited her driving to medical appointments or grocery shopping because of the discomfort caused by sitting too long (Docket No. 14, Exhibit 3, pp. 6-7 of 25).

Plaintiff's relevant work history included positions as an inspector and as a jobs' coordinator. Most recently, she had worked at Grand River Rubber for two years in two capacities. Initially, she inspected parts and later as a data entry clerk. As an inspector, she lifted, at most, 30 pounds. The data entry job was primarily desk and office oriented; however, she also walked throughout the plant to address problems. During a typical day, she spent half her day standing and half day sitting. Plaintiff left her job at Grand River because of arm numbness and pain which she experienced at the end of the work day (Docket No. 14, Exhibit. 3, pp. 7-9 of 25).

Plaintiff also worked as a press operator at Andover Industries and Premex in North Kingsville. At Premex, she lifted as much as 35 pounds of materials. Plaintiff was also employed for two years as a medical records clerk in a prison and also as a front desk receptionist (Docket No. 14, Exhibit 3, pp. 9-10 of 25).

Diagnosed with Multiple Sclerosis (MS) in December 2006, Plaintiff took daily injections of Copaxone to retard progression of symptoms. The side effect of Copaxone included injection site burning, swelling and itching. Plaintiff described difficulty walking for the past two weeks and progressive fatigue. She gave examples of failing memory and inability to concentrate on a "bad" day. However, her "biggest" problem was the shakiness and loss of strength in her dominant right hand and arm. Other examples of her difficulties included a limited ability to open a bottle of Gatorade® or a jar of jelly, dropping cans or glasses of soda, and inabilities to lift objects or to engage in prolonged walking or sitting with foot pain. When working at the computer for less than thirty minutes, Plaintiff's hand started tingling and then became numb. Consequently, Plaintiff was unable to write for any period of time. Looking down caused a tingly sensation that radiated down her back to her knees and she experienced migraines about once monthly. Imitrex eased the migraine pain if taken prior to its onset. Plaintiff walked without a cane or other aid (Docket No. 14, Exhibit. 3, pp. 12-19 of 25).

In response to the ALJ's request to describe her typical day, Plaintiff testified that she arose at 6:00 A. M. with her children, prepared them for school, packed their lunches, put them on the bus and then napped until midmorning. Her regular household chores included washing, folding laundry on alternating days, washing dishes, cleaning the bathrooms, cooking, and cutting the grass using a riding lawnmower. Plaintiff was unable to perform her chores during flare-ups of her MS. During her last severe flare-up two years earlier, her entire right side was completely immobilized. She was unable to lift her arm and could barely walk. Fewer intense flare-ups marked by a numb right arm for three or four days occurred biannually. During non flare-up periods, Plaintiff could perform her personal grooming and hygiene without assistance. Plaintiff's social activities were limited to

playing games with her children and spending time with family as she had no hobbies or group affiliations (Docket No. 14, Exhibit 3, pp 10-12, 15-17of 25).

**B.      THE VE'S TESTIMONY**

The VE classified Plaintiff's past relevant work as shift coordinator as defined in the Dictionary of Occupational Titles (DOT) as semiskilled with sedentary physical demands; however, the testimony described the job being performed as light work. The factory inspector position was light, as per requirements, skilled and performed as medium work. The job as press operator was skilled with heavy physical demands. The job as medical records clerk was a semiskilled position with heavy physical demands. The truck stop service tech position had physical demands; however the job was not performed long enough to have transferable skills (Docket No. 14, Exhibit 3, p. 20 of 25).

     **1.      HYPOTHETICAL QUESTION NUMBER ONE:**

The VE considered a hypothetical worker of Plaintiff's age, educational background and level of employment, who is limited to:

- Light exertion as defined by the Social Security Regulations
- Occasionally pushing, pulling with the dominant upper extremities but having full use of the non-dominant upper extremities
- Alternating between sitting and standing during the workday;
- Not performing work overhead
- Not using ladders or working at unprotected heights

(Docket No. 14, Exhibit 3, p. 21 of 25 ).

The VE responded that some jobs within Plaintiff's past relevant work could be performed and gave the following examples: fast food worker, front desk clerk, medical records clerk and shift coordinator. The VE stated that other jobs with light physical demands that the hypothetical Plaintiff could perform include: office helper, warehouse checker, DOT number 222.687-010 and order caller,

DOT number 209.667-014. The jobs identified by the VE were substantially the same as they are described in DOT (Docket 14, Exhibit.3 p. 23 of 25). The VE acknowledged that none of these standards included a sit/stand option; however, she was familiar with jobs that would accommodate a sit/stand option. In this case, there were a number of jobs that would accommodate the hypothetical worker and are available in the national and state economies:

| JOB | DOT NUMBER | NATIONAL AVAILABILITY | State Availability |
|---|---|---|---|
| OFFICE HELPER | 239.567--010 | 150,000 | 4,000 |
| WAREHOUSE CHECKER | 222.687-010 | 42,000 | 1,000 |
| ORDER CALLER | 209.667-014 | 22,000 | 1,000 |

(Doc. No. 14, Exhibit. 3, pp. 22 of 25).

2.  **HYPOTHETICAL QUESTION NUMBER TWO**:

The first hypothetical was revised to include the limitation of restriction to sedentary exertion and a job within an unskilled specific vocational preparation (SVP) classification would include: charge account clerk, food and beverage order clerk. The VE responded that available jobs that such a person could perform are as follows:

| JOB | DOT NUMBER | NATIONAL AVAILABILITY | STATE AVAILABILITY |
|---|---|---|---|
| CHARGE ACCOUNT CLERK | 205. 567-014 | 50,000 | 2,000 |
| FOOD AND BEVERAGE ORDER CLERK | 209.567-014 | 275,000 | 5,500 |
| SURVEILLANCE SYSTEM MONITOR | 379.367-010 | 185,000 | 3,200 |

If the individual were subject to missing two or more days a month of work or subject to frequent, unscheduled breaks during the day lasting longer than fifteen minutes each, such requirements would preclude all competitive work (Docket No. 14, Exhibit 3, p.22-23 of 25).

When questioned by Plaintiff's attorney, the VE testified that if the hypothetical Plaintiff had

only occasional use of her dominant right arm, all work would be precluded (Docket No. 14, Exhibit 3, p. 23 of 25). Similarly, all work would be precluded if Plaintiff were limited to

- Lifting ten pounds occasionally and lifting five pounds frequently;
- Standing and walking for a total of three hours in an eight-hour day, half an hour without interruption,
- Sitting a total of three hours in an eight-hour day, 15 minutes without interruption.

(Docket No. 14, Exhibit 3, p. 24-25 of 25).

### III. MEDICAL EVIDENCE

On December 11, 2006, Plaintiff was treated at Brown Memorial Hospital for numbness in her right arm and leg (Docket No. 14, Exhibit 10, p. 2 of 16). Results from the computed tomography (CT) scan of Plaintiff's head/brain were negative (Docket No. 14, Exhibit 10, p. 5 of 16).

On August 6, 2006, Plaintiff suffered a miscarriage. Dr. Moon K. Yoon, M. D., performed a dilatation and curettage (Docket No. 14, Exhibit 11, pp. 22-38; Exhibit 12, pp. 2-7 of 38) ).

On December 19, 2006, Dr. Lance Williams, MD., found demyelinating lesions indicative of MS (Docket No. 14, Exhibit 12, p. 33 of 38). Plaintiff was officially diagnosed with MS on December 20, 2006 per a magnetic resonance imaging (MRI) that showed the disease of her right side and lower extremities (Docket No. 14, Exhibit 10, p. 12 of 16).

On September 14, 2007, Plaintiff was treated for dental pain (Docket No. 14, Exhibit 11, p. 11 of 38).

A consultative examiner, Dr. Mary Helene Massullo, explained on June 23, 2008, that Plaintiff could raise her shoulders, elbows, wrists, fingers, hips, knees and feet against maximal resistance (Docket No. 14, Exhibit 10, p. 13 of 16). Plaintiff's range of motion in the cervical spine, shoulders, elbows, wrist, fingers, dorsolumbar spine, hips, knees and ankles was within normal limits (Docket No. 14, Exhibit 10, pp. 15-16 of 16).

In July 2008, Plaintiff fell and injured her left wrist. There was no evidence of fracture or dislocation. The wrist was placed in a splint. She was prescribed Vicodin for pain. (Docket No.14, Exhibit 11, pp. 3-5, 9 of 38).

Plaintiff was treated for migraines on September 18, 2008 (Docket No. 14, Exhibit 12, p. 9 of 38).

On December 1, 2008, Dr. W. Jerry McCloud, M. D., opined that Plaintiff had no exertional limitations, but that she should never climb, and that she should avoid all exposure to hazards such as dangerous machinery or unprotected heights (Docket No. 14, Exhibit 12, pp. 13-17 of 38).

Results from the MRI of Plaintiff's brain administered on April 16, 2009, showed no evidence of nerve damage, acute intracranial abnormality or ischemia. There were stable changes of MS and no evidence of active demyelination based on imaging (Docket No. 14, Exhibit 12 p. 22 of 38).

Dr. James Chillcott, M. D., a family practitioner, examined Plaintiff on April 28, 2009, and found no new lesions. In fact, he noted that Plaintiff's MS appeared mild and well controlled on Copaxone. He was concerned about near-syncopal episodes so he considered referring her to a syncope or an epilepsy clinic (Docket No. 14, Exhibit 12, p. 36 of 38).

Dr. Chillcott noted on September 18, 2008, that Plaintiff had mild right hemiplegia (Docket No. 14, Exhibit 16, p. 34 of 40). On October 16, 2008, Dr. Chillcott noted that he suspected hyperlipidemia (Docket No. 14, Exhibit 16, p. 32 of 40).

Plaintiff presented to the Ashtabula Medical Center on an emergency outpatient basis and treated for complaints on these dates:

- January 13, 2009–increased anxiety and hives (Docket No. 14, Exhibit 15, p. 12 of 19).

- January 16, 2009-- emergency dental treatment (Docket No. 14, Exhibit 13, p. 20 0f

7

20).

- ▸ February 19, 2009–cough, nasal congestion, acute sinusitis/bronchitis and symptoms of depression (Docket No. 14, Exhibit 13, p. 18 of 20)

- ▸ March 1, 2009-- severe migraine after over the counter medication failed to provide relief (Docket No. 14, Exhibit 13, p. 17 of 20).

- ▸ March 26, 2009--Dr. Alexander Taich, M. D., an ophthalmologist, opined that Plaintiff's visual episodes were attributable to typical migraine aura but there was no acute optic neuritis (Docket No. 14, Exhibit 13, p. 12 of 20; Docket No. 14, Exhibit 16, pp. 26-27).

- ▸ May 7, 2009–an insect bite to the left leg and possible early cellulitis of the left leg (Docket No. 14, Exhibit 15, p. 5 of 19).

- ▸ May 8, 2009–tenderness and bilateral swelling of the knees, shoulders and left elbow; was treated with SOLU-MEDROL, a steroid that decreases inflammation (Docket No. 14, Exhibit 14, p. 11-13 of 27).

- ▸ May 29, 2009--Plaintiff presented for the treatment of hives that had diffused. Dr. Anju Varanasi administered an anti-inflammatory medication and steroid to be tapered in two days (Docket No. 14, Exhibit 13, p. 2 of 20).

- ▸ June 2, 2009–swelling and pain in the face and right lower lip treated with SOLU-MEDROL (Docket No. 14, Exhibit 14, p. 3 of 27).

In the meantime, on March 25, 2009, Dr. Chillcott noted that Plaintiff's MS was stable and since taking Cymbalta, a medication used to treat depression, Plaintiff's levels of energy and ambition had improved (Docket No. 14, Exhibit 13, p. 15 of 20; Docket No. 14, Exhibit 16, p. 25 of 40). On May 13, 2009, Dr. Chillcott implemented a plan that included drug therapy and adjustment to environmental airway allergens. This plan included modifying how soaps and detergents were used. Depo-Medrol, Benadryl and a statin were prescribed to address chronic hives flare-ups (Docket No. 14, Exhibit 16, p. 20 0f 40).

On May 18, 2009, Dr. Richard Krajec, M. D., continued the drug therapy initiated by Dr. Chillcott (Docket No. 14, Exhibit 16, p. 18 of 40).

8

Dr. Adrienne Boissy, M. D., a neurologist, completed a Multiple Sclerosis Questionnaire on July 8, 2009, and determined that:

- Clinical findings demonstrate persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances due to cerebral, cerebellar, brain stem, spinal cord or peripheral nerve dysfunction which substantially interfered with the use of at least two extremities.

- Plaintiff demonstrated psychological or behavioral abnormalities associated with dysfunction of the brain that resulted in change in personality and disturbance of mood.

- Plaintiff exhibited significant reproducible fatigue or motor function with substantial muscle weakness on repetitive activity from a neurological dysfunction in the areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

(Docket No. 14, Exhibit 15, p. 18-19 of 19).

Dr. Boissy requested an evaluation of Plaintiff's chronic skin rash. Dr. Susan R. Abouhassan, M. D., a specialist in allergies/immunology, diagnosed Plaintiff with an idiopathic skin rash. An anti-allergy medication was prescribed (Docket No. 14, Exhibit 16, pp. 2-5 of 40).

On August 17, 2009, Dr. Chillcott prepared a medical source statement of Plaintiff's physical capacity in which he made the following assessment:

- Marked limitations in the upper extremities;
- Standing and walking affected by intermittent foot drop; and
- Sitting is affected by restless legs which create "off balance."

It was Dr. Chillcott's opinion that Plaintiff could occasionally:

- Crouch
- Kneel
- Crawl
- Reach
- Handle
- Feel
- Push/pull
- Gross manipulation.

9

Plaintiff's impairment was affected by:

- Heights
- Moving machinery
- Temperature extremes
- Chemicals.

Finally, Dr. Chillcott opined that Plaintiff needed an additional break during the day at two-hour intervals and she required a sit/stand option. He described the pain that Plaintiff experienced as moderate (Docket No. 14, Exhibit 16, pp. 39-40).

### IV. STEPS TO SHOWING ENTITLEMENT TO SOCIAL SECURITY BENEFITS.

DIB and SSI are available only for those who have a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); See also 20 C.F.R. § 416.920)). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); See also 20 C.F.R. § 416.905(a) (same definition used in the SSI context)). The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively. To assist clarity, the remainder of this decision refers only to the DIB regulations, except where otherwise necessary.

To determine disability under Sections 404.1520 and 416.920, a plaintiff must first demonstrate that he or she is not currently engaged in "substantial gainful activity" at the time he or she seeks disability benefits. *Id.* (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. *Id.* A "severe impairment" is one which "significantly limits the claimant's

10

physical or mental ability to do basic work activities. *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id.*

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id.* (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001)(internal citations omitted) (second alteration in original)). If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates. *Id.* (*citing* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).

## V. THE ALJ'S FINDINGS.

The ALJ applied the governing five step analyses and determined that Plaintiff was not disabled. Upon consideration of the evidence, the ALJ made the following findings:

At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2013, and that she had not engaged in substantial work activity as defined at 20 C. F. R. § 404.1572, since March 15, 2008, the alleged onset date.

At step two, the ALJ found that Plaintiff had MS, a severe impairment. All other alleged impairments were non-severe because they did not exist for a continuous period of at least 12 months, were responsive to medication, did not require any significant medical treatment or did not result in any continuous exertional or non-exertional functional limitations (20 C.F.R. § 404.1509 and Social

11

Security Ruling (SSR) 85-28).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1 (20 C.F. R §§ 404.1520 (d). 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

At step four, the ALJ found that Plaintiff had the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours and sit for six hours in an eight-hour workday when she is allowed to alternate sitting and standing periodically. She could perform tasks that did not require her to work overhead, to work around unprotected heights or work that requires more than occasional pushing or pulling with her dominant upper extremity.

At step five, the ALJ found that Plaintiff, a younger individual aged 18 -49, with at least a high school education and the ability to communicate in English, could perform past relevant work; however, in an effort to give Plaintiff the benefit of every doubt, the ALJ evaluated Plaintiff's condition under the remaining steps in the sequential process. He concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

The ALJ concluded that Plaintiff was not under a disability, as defined in the Act, from May 1, 2004, through the date of this decision.

(Docket No. 14, Exhibit 2, pp. 14-22).

## VI.  STANDARD OF REVIEW.

Title 42 U.S.C. § 405(g) permits the district court to conduct judicial review over the final decision of the Commissioner. *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-

833 (6th Cir. 2006). Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. *Longworth v. Commissioner Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir.2004) (*quoting Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007).

In deciding whether to affirm the Commissioner's decision, it is not necessary that the court agree with the Commissioner's finding, as long as it is substantially supported in the record. *Id.* (*citing Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth, supra,* 402 F. 3d at 595 (*citing Warner, supra*, 375 F.3d at 390) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2478 (1983) (internal quotation marks omitted)). If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Id.* (*citing Warner,* 375 F.3d at 390) (*quoting Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).

## VII.  DISCUSSION.

Plaintiff suggests that this case should be reversed and remanded as the ALJ erred by failing to attribute substantial weight to the opinions of Drs. Boissy, Chillcott and Massullo.

Defendant argues that substantial weight cannot be attributed to Dr. Boissy's opinions as they were not supported by test results or other objective findings.  Defendant contends that Plaintiff's testimony and other opinion evidence support a finding that minimal weight should be afforded Dr. Chillcott's extreme limitations.  Finally, Defendant explained that Dr. Massullo's opinions were inconsistent with medical evidence and therefore entitled to little weight.

### 1.    TREATING PHYSICIAN STANDARD OF REVIEW.

The treating physician rule occupies a special place in social security cases; indeed, treating physicians are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations."  *Rabbers v. Commissioner Social Security Administration*, 582 F.3d 647, 656 (6th Cir. 2009) (*citing* 20 C.F.R. § 404.1527(d)(2)).  Because the opinion of the treating physician plays such a central and important role in a claimant's application for social security benefits, the reasons-giving requirement of § 404.1527(d)(2) serves its own independent and important function: as a safeguard to "ensure that the ALJ applies the treating physician rule."  *Id.* (*citing Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.  *Cross v. Commissioner of Social Security*, 373 F. Supp.2d 724, 729 -730 (N. D. Ohio

2005). Generally, more weight is attributed to treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)). If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight. *Id.* (*citing* 20 C. F. R. § 404. 1527(d)(2)).

    **a.**    **DR. BOISSY**

Upon review of the record, the Magistrate finds that the ALJ's decision to attribute little weight to the opinions of Dr. Boissy, a treating neurologist, whose opinions are not supported by the evidence is well founded (Docket No. 14, Exhibit 2, pp. 16, 19 of 22). Dr. Boissy completed a Multiple Sclerosis Questionnaire on July 8, 2009, and determined that Plaintiff's symptoms were of the severity to meet 11.09 of the Listing. There are no treatment notes or other objective evidence to support a treating relationship or that warrant the application of substantial weight. The ALJ employed the correct legal standard in determining the weight to be applied to Dr. Boissy's unsubstantiated conclusions. The Magistrate defers to that finding.

    **b.**    **DR. CHILLCOTT**.

The ALJ followed the rules, attributing significant weight to Dr. Chillcott's opinions that were supported in the record and discounting Dr. Chillcott's opinions that were internally inconsistent with each other (Docket No. 14, Exhibit 2, pp. 18, 19 of 22). Specifically, in April 2009, Dr. Chillcott found, in effect, that Plaintiff was in remission and that her symptoms attributed to MS were mild.

Later in August 2009, he reported that Plaintiff could not perform the functional requisites for work. There is nothing in the medical record that documents such significant deterioration of the Plaintiff's condition which significantly limited her ability to perform the functional requisites for work. The ALJ discounted these opinions as they were not only internally inconsistent, they were unsupported by a longitudinal accounting of such deterioration. The ALJ employed the correct legal standard, explaining the weight given and why he gave it. Accordingly, the Magistrate defers to these findings.

## 2. CONSULTATIVE EXAMINATION.

Dr. Massullo conducted a consultative examination on June 24, 2008 at the request of the Social Security Administration. Plaintiff contends that Dr. Massullo's opinions are entitled to substantial weight.

The opinions of state agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the ALJ and Appeals Council levels that was not before the state agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the state agency medical or psychological consultant or other program physician or psychologist. *Trent v. Astrue,* 2011 WL 463371, *9 (S. D. Ohio 2011). The adjudicator must also consider all other facts that could have a bearing on the weight to which an opinion is entitled, including any specialization of the state agency medical or psychological consultant. *Id.* (*citing* SSR 96-6p, 1996 WL 374180 at *2).

Here, the ALJ indicated that pursuant to SSR 96-5p, Dr. Massullo's opinions with regard to the impact that Plaintiff's MS symptoms were considered was given minimal weight. The ALJ did

16

weigh the opinions of this one-time examining physician under the regulatory factors, including supportability, consistency of the opinion with the record as a whole and the explanation for the opinion provided by Dr. Massullo (Docket No. 14, Exhibit 2, pp. 17-18 , 19 of 22).  To the extent that Dr. Massullo opined that Plaintiff's ability to work during flare-ups was compromised, the ALJ attributed limited weight to this conclusion as it was inconsistent with the evidence of mild symptoms and/or symptoms being controlled by medication.

There is relevant evidence to support the ALJ's conclusion that Dr. Massullo's conclusion about Plaintiff's inability to work during flare-ups is overstated.  The Magistrate defers to the ALJ's decision as he discussed Dr. Massullo's opinions, adopted them in part and articulated that he discounted those portions of the opinion that were inconsistent with the evidence as a whole.

## VIII. CONCLUSION

For these reasons, the Magistrate affirms the Commissioner's decision.

**IT IS SO ORDERED.**

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   August 30, 2011